JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Santonio Ford ("Ford"), appeals the denial of his motion by the trial court to withdraw his guilty pleas in case numbers CR-431136 and CR-431940 and the failure of the trial court to conduct a hearing on Ford's motion. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} Ford was indicted in case number CR-431136 on a charge of assault with a peace officer specification, a violation of R.C. 2903.13, a felony of the fourth degree. He was also charged in CR-431940 with felonious assault, a violation of R.C. 2903.11, a felony of the second degree; intimidation, a violation of R.C.2921.04, a felony of the third degree; and domestic violence, a violation of R.C. 2919.25, a misdemeanor of the first degree.
 {¶ 3} Ford entered guilty pleas on January 8, 2003 to assault with a peace officer specification, as charged in CR-431136, and to felonious assault and domestic violence, as charged in CR-431940. The intimidation count was dismissed as a condition of the plea. Ford was sentenced on February 10, 2003 to eighteen months on the assault on a peace officer charge concurrent with a three-year sentence for the felonious assault charge and a concurrent sentence of six months on the domestic violence charge.
 {¶ 4} In addition, Ford had pending in CR-417267 an allegation that he violated the terms of his community control sanction for the offense of carrying a concealed weapon, a felony of the fourth degree. The court made a finding that Ford violated the terms of the community control sanction, but it did not impose a prison term on Ford for this charge.
 {¶ 5} At the sentencing hearing, Ford verbally objected to the court's imposition of the three-year term of incarceration on the felonious assault charge in CR-431940, claiming he was promised by counsel prior to the plea that the court would impose a minimum term of two years on that charge. Ford's counsel indicated on the record that he told Ford in the holding cell prior to the plea that the court would give Ford the minimum of two years, but acknowledged the court informed counsel prior to the plea that the court would only consider the minimum term and wanted to review the victim impact statement prior to deciding on giving the minimum term. Counsel indicated that Ford was not informed of this condition prior to the plea.
 {¶ 6} Ford formally filed his brief on the delayed appeal on April 9, 2004, asserting two assignments of error. Since the assignments of error are interrelated, we will address them together.
 {¶ 7} Ford's first assignment of error reads as follows:
 {¶ 8} "The defendant-appellant's right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution were violated and he did not enter a knowing, intelligent and voluntary plea to a charge of Felonious Assault, Domestic Violence and Assault with a Peace Officer Specification when he is under the impression that he will only be sentenced to two (2) total years of incarceration."
 {¶ 9} Ford's second assignment of error reads as follows:
 {¶ 10} "The trial court erred to the prejudice of the defendant-appellant when it failed to properly conduct a hearing upon the defendant-appellant's oral motion to withdraw his plea of guilty."
 {¶ 11} These assignments of error argue that the trial court violated Ford's constitutional rights by enforcing a plea that Ford claims he did not enter knowingly, intelligently, or voluntarily and then prejudiced him further by refusing to hold a hearing on Ford's oral motion to withdraw the guilty pleas at the conclusion of the sentencing hearing.
 {¶ 12} As we outlined in State v. Craddock, Cuyahoga App. No. 83870, 2004-Ohio-627, Crim.R. 32.1 governs motions to withdraw guilty pleas. "A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1.
 {¶ 13} "It has been expressly recognized by the weight of authority that a defendant seeking to withdraw a plea of guilty after sentence has the burden of establishing the existence of manifest injustice." State v. Smith (1977), 49 Ohio St.2d 261. A decision on a defendant's motion to withdraw a guilty plea will not be disturbed on appeal absent an abuse of discretion. Statev. Boynton (Aug. 14, 1997), Cuyahoga App. No. 71097.
 {¶ 14} An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Clark, 71 Ohio St.3d 466,1994-Ohio-43. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe I (1991),57 Ohio St.3d 135. With this standard in mind, we review the matter before us.
 {¶ 15} Ford argues that he was promised by his attorney that he would receive a minimum term of two years on the felonious assault charge, concurrent with the other charges pending in CR-431136, CR-431940 and CR-417267. This discussion apparently took place off the record in the holding cell just prior to the plea and was based on discussions that Ford's counsel had with the prosecutor and the trial court, off the record, in chambers prior to the plea hearing. Although Ford points to his verbal objections on the record and the reference by his attorney on the record at the conclusion of the sentencing hearing to the purported plea deal, we decline to find that these factors satisfy Ford's claim entitling him to withdraw his pleas or to have a hearing on his motion to withdraw guilty pleas after sentencing. The record reflects the court advised Ford of the changed conditions on the record prior to the plea.
 {¶ 16} While we are cognizant of expectations that can and are created during plea discussions, it is the dialogue on the record in open court that is controlling.
 {¶ 17} In the instant case, there is no dispute that the trial court properly outlined the potential maximum penalties and thoroughly conducted the proper Rule 11 colloquy with Ford.
The trial court and the parties initially addressed the issue of the sentence as follows:
{¶ 18} "THE COURT: Mr. Spellacy, I know you've been throughthis extensively with your client. But it's the court'sunderstanding — is he aware of the offer that's been made tohim?
 {¶ 19} "MR. SPELLACY: Yes, your Honor. I have discussed theoffer in this case as well as our discussions with the prosecutorin chambers with regards to the potential sentence that thiscourt would consider."
 {¶ 20} (Emphasis added.)
 {¶ 21} Later, after a brief sidebar and prior to the plea, the court clarified its position on sentencing:
 {¶ 22} "THE COURT: The record will additionally reflect therehave been discussions among counsel with regard to sentencing inthe event Mr. Ford's plea were to be forthcoming, thosediscussions have been inconclusive other than that the court hasindicated that it would consider, if sufficient mitigation wereproduced, minimum term in the criminal docket No. 431490, andthat it would, the court would consider on the motion thepossibility of terminating community controlled sanctions in theother matter."
 {¶ 23} (Emphasis added.)
 {¶ 24} The court then went on to state:
{¶ 25} "THE COURT: However, the court would want theopportunity to hear from the victim, Miss Ford, prior to makingany sentencing decision. So the court will confirm for therecord those discussions have taken place."
 {¶ 26} (Emphasis added.)
 {¶ 27} The court then, in an effort to insure clarity, directly addressed Ford on the sentencing issue:
{¶ 28} "THE COURT: I want to be sure that you understand whatis taking place here and what is being put on the table.
 {¶ 29} "THE DEFENDANT: Right.
 {¶ 30} "THE COURT: Do you understand that?
 {¶ 31} "THE DEFENDANT: Yes."
 {¶ 32} Ford then indicated he would "go with the deal." It is clear that, at this point, whatever representations were made to Ford by counsel off the record prior to the plea hearing had been altered or clarified by the trial court on the record. Ford at this point could have declined the offer and proceeded to trial, but he did not do so. While Ford apparently clung to the mistaken belief that he would be guaranteed the minimum sentence by entering a plea, this belief is not supported by the dialogue on the record.
 {¶ 33} Further, after outlining the plea deal, the prosecutor indicated the following:
{¶ 34} "THE PROSECUTOR: There have been no threats orpromises made to secure this plea, your Honor, in either ofthese cases other than what has been put on the record beforeyou."
 {¶ 35} (Emphasis added.)
 {¶ 36} Defense counsel acknowledged the terms stating:
{¶ 37} "MR. SPELLACY: That's my understanding your Honor. Mr.Ford has indicated to the court anyways that he would like toaccept the proposed deal as he put it."
 {¶ 38} After the court explained in detail the elements of the offenses and the potential penalties, the court and Ford had the following dialogue that Ford asserts is the basis of the purported sentence.
{¶ 39} "THE COURT: Okay? Other than the things we discussedhere in open court now and on the record, anybody including yourlawyer or the prosecutor's office or this court specificallypromised you anything or threatened you to plead guilty?
 {¶ 40} "THE DEFENDANT: There was an agreement reached as tothe two years.
 {¶ 41} "THE COURT: Other than what we talked about heretoday?
 {¶ 42} "THE DEFENDANT: That was it."
 {¶ 43} The off-the-record promise of defense counsel, the prosecutor, and the trial court was clarified by the trial court and acknowledged by Ford on the record in open court. Any subsequent reliance on the belief of an agreed sentence by Ford was misplaced and is not supported by the record. This court recognizes that Ford's counsel has the highest degree of integrity and no doubt accurately communicated to Ford what was initially discussed in chambers. Nevertheless, for reasons outlined on the record, the trial court clarified or altered its position with respect to the minimum sentence prior to the plea. Since this was done on the record, and Ford formally acknowledged the court's position, the claim of error is misplaced. Suggesting that a court could never clarify a position or change a stated position on a plea arrangement is not valid. Here, the court outlined its position and communicated it formally prior to the plea.
 {¶ 44} In his second assignment of error, Ford alleges prejudice on the basis that the trial court refused to grant him a formal hearing on his oral motion to withdraw his plea. We note that Ford never filed a formal motion to withdraw his plea, as suggested by the trial court, when Ford initially complained orally of the sentence on February 10, 2003. Nevertheless, even Ford's oral claim does not present evidence of a manifest injustice.
 {¶ 45} As we outlined above, after sentence has been imposed, a trial court may permit a defendant to withdraw a guilty plea only to correct a manifest injustice. The burden of establishing the existence of such injustice is upon the defendant. Smith,49 Ohio St.2d 261. The logic behind this precept is to discourage a defendant from pleading guilty to test the weight of potential reprisal and later withdrawing the plea if the sentence is unexpectedly severe. State v. Caraballo (1985),17 Ohio St.3d 66, citing State v. Peterseim (1980), 68 Ohio App.2d 211.
 {¶ 46} In State v. Sneed, Cuyahoga App. No. 80902, 2002-Ohio-6502, this court stated that "A manifest injustice is defined as a `clear or openly unjust act.' Another court has referred to it as `an extraordinary and fundamental flaw in the plea proceeding.' Again, `manifest injustice' comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." (Internal citations omitted.)
 {¶ 47} An individual who enters a plea of guilty has no right to withdraw it. Peterseim, 68 Ohio App.2d at 213. It is within the sound discretion of the trial court to determine what circumstances justify the granting of a motion to withdraw and will not be overturned on appeal absent an abuse of discretion.Smith, 49 Ohio St.2d 261, paragraph two of the syllabus; Statev. Stumpf (1987), 32 Ohio St.3d 95.
 {¶ 48} Although at some point there was likely an understanding in place that Ford would receive the minimum sentence in exchange for his plea, that condition was changed by the trial court on the record, in open court, prior to the plea. The fact that Ford apparently chose not to listen to the trial court's clarification of the plea terms does not render the plea invalid. Ford verbally stated that he understood the court's position and openly agreed to the plea. When a representation is made that someone understands the terms of a plea, deviating from what is plainly said or inferring a different meaning or understanding from the dialogue does not serve the interests of justice. Such an approach only invites "claimed" errors.
 {¶ 49} In light of these facts, we cannot say the trial court abused its discretion in determining that no injustice had occurred, in refusing to grant Ford's request to withdraw his plea, or in refusing to hold a hearing on the oral motion to withdraw the guilty plea. We, therefore, affirm the decision of the trial court as to assignments of error one and two.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., concurs.
 Karpinski, J., dissents with separate dissenting opinion.
 DISSENTING OPINION