STATE ex rel. ATTORNEY GENERAL OF OHIO, Appellant,

v.

SHIELDALLOY METALLURGICAL CORPORATION et al., Appellees.

[Cite as *State ex rel. Atty. Gen. of Ohio v. Shieldalloy Metallurgical Corp.*, 156 Ohio App.3d 409, 2004-Ohio-982.]

Court of Appeals of Ohio,
Fifth District, Guernsey County.

No. 2003CA14.

Decided Feb. 27, 2004.

Jim Petro, Attorney General, and Timothy J. Kern, Assistant Attorney General, for appellant.

Richard P. Fahey, John P. Gartland and Jason J. Kelroy, for appellees.

WILLIAM B. HOFFMAN, Presiding Judge.

{¶ 1} Plaintiff-appellant state of Ohio ex rel. Attorney General of Ohio appeals from the May 23, 2003 final judgment entry entered by the Guernsey County Court of Common Pleas, which found that the state had failed to prove beyond a reasonable doubt that defendant-appellee Shieldalloy Metallurgical Corporation ("Shieldalloy") had intentionally, recklessly, or willfully violated the PICO, and dismissed the state's contempt charges against Shieldalloy.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} On July 11, 1995, the state filed a complaint in the Guernsey County Court of Common Pleas, alleging that Shieldalloy had caused contamination of on-site wetlands at its manufacturing facility located on State Rte. 209. The state further alleged that Shieldalloy committed numerous other surface-water and hazardous-waste violations. On April 11, 1997, the state and Shieldalloy signed a Permanent Injunction Consent Order ("PICO"), which was submitted to the trial court. The parties published the PICO for public comment, after which time the trial court ordered the parties to comply with the terms of the PICO on July 24, 1997. Accordingly, July 24, 1997, became the effective date of the PICO.

{¶ 3} Under the terms of the PICO, Shieldalloy was required to implement a comprehensive remedy to clean up the contamination at its facility. Shieldalloy was obligated to pay the response costs to the state. In addition, the PICO set forth a time frame in which Shieldalloy was required to obtain compliance with hazardous waste and water-pollution requirements. In order to ensure compliance, the PICO included per-day stipulated penalties. The PICO also contained dispute-resolution provisions and timelines in which the parties could address disputes over compliance issues.

{¶ 4} On September 23, 2002, the state filed written charges in contempt, requesting that the trial court order Shieldalloy to comply with the PICO. The state specifically requested injunctive relief to resolve the compliance issues, payment of unreimbursed response costs, and payment of per-day stipulated penalties. Prior to the evidentiary hearing, the trial court ruled that the action was that of criminal contempt and found that the proper burden of proof was beyond a reasonable doubt. See March 12, 2003 order. The trial court conducted an evidentiary hearing on April 2 and 3, 2003. Via judgment entry filed May 23, 2003, the trial court found that the state had failed to show beyond a reasonable doubt that Shieldalloy had intentionally, recklessly, or willfully violated the PICO and dismissed the state's contempt charges.

{¶ 5} It is from this judgment entry that the state appeals, raising the following assignments of error:

{¶ 6} "I. The PICO imposes prospective penalties, the state's contempt action to enforce these penalties is a civil contempt action, and the proper burden of proof is clear and convincing evidence.

{¶ 7} "II. The response costs incurred by the state were agreed upon in the PICO and were not disputed as required by the PICO. The state's response costs must be paid in full by defendant Shieldalloy."

I

{¶ 8} In its first assignment of error, the state maintains that the contempt action against Shieldalloy was civil in nature and that the proper burden of proof was clear and convincing evidence. We agree.

{¶ 9} A contempt finding may be civil or criminal in nature. In *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253–254, 18 O.O.3d 446, 416 N.E.2d 610, the Supreme Court of Ohio discussed the distinction between criminal and civil contempt as follows: "While both types of contempt contain an element of punishment, courts distinguish civil and criminal contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. * * * Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. * * *" (Citations omitted.)

{¶ 10} We must determine whether the contempt prayed for is civil or criminal in nature. The state maintains that the contempt is civil, as the sanctions are designed to encourage Shieldalloy to complete the remedial action. The PICO contains schedules for implementing compliance and includes stipulated penalties for failure to timely complete the cleanup. The stipulated penalties were included in the PICO in order to coerce Shieldalloy to obey with the terms thereof. The penalties and sanctions were not designed to punish Shieldalloy for violations that occurred prior to the effective date of the PICO. We agree with the state and find that the contempt is civil in nature. Accordingly, we reverse the trial court's judgment and remand the matter to the trial court for redetermination under the standard of proof for civil contempt.

{¶ 11} The state's first assignment of error is sustained.

## II

{¶ 12} In light of our disposition of the state's first assignment of error, we find the second assignment to be premature.

{¶ 13} The judgment of the Guernsey County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion and the law.

Judgment reversed
and cause remanded.

JOHN W. WISE and BOGGINS, JJ., concur.